[Cite as *State v. Roberts*, 2024-Ohio-1772.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

BRANDON DANQUEL ROBERTS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 23 BE 0031

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 20 CR 263

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan*, Belmont County Prosecutor and *Atty. Jacob A. Manning*, Assistant Prosecuting Attorney, Belmont County Prosecutor's Office, for Plaintiff-Appellee and

*Atty. Martin Yavorcik*, for Defendant-Appellant.

Dated: May 3, 2024

**HANNI, J.**

{¶1} Defendant-Appellant, Brandon Danquel Roberts, appeals from a Belmont County Common Pleas Court judgment convicting him of aggravated possession of drugs, following a jury trial. Appellant alleges his trial counsel was ineffective for failing to agree to a mistrial when it was offered by the court and that the trial court did not make the required findings to impose consecutive sentences. But as seen below, Appellant cannot demonstrate that his counsel was ineffective and the trial court made the requisite consecutive sentencing findings.

{¶2} In July 2020, Appellant was an inmate at the Belmont Correctional Institution. While performing his rounds, Corrections Officer David White saw Appellant sitting on his locker facing the wall and "fidgeting" with something. C.O. White asked to see what Appellant was holding. Appellant showed him an empty deodorant stick. The C.O. noticed Appellant put something in his shoe. C.O. White searched Appellant's shoe and found a plastic bag containing a white powdery substance. The C.O. suspected the bag contained drugs. Appellant was subsequently searched and another bag of suspected drugs was found inside Appellant's sock.

{¶3} The suspected drugs were tested and were found to contain methamphetamine weighing approximately 26 grams. The estimated value of this amount of methamphetamine inside the prison was $20,000.

{¶4} On October 8, 2020, a Belmont County Grand Jury indicted Appellant on one count of aggravated possession of drugs, a second-degree felony in violation of R.C. 2925.11(A) and R.C. 2925.11(C)(1)(c). Appellant entered a not guilty plea.

{¶5} Appellant was released from prison on February 26, 2021. The trial court set his bond and scheduled the matter for trial on April 27, 2021. But on April 26, 2021, Appellant's counsel advised the court that Appellant had ceased communicating with him, he was not confident that Appellant would appear for trial, and asked to withdraw. The trial court converted the trial set for the next day to a hearing. Appellant failed to appear. The court revoked Appellant's bond and issued a warrant for his arrest.

{¶6} Over two years later, the court was notified that Appellant was arrested on May 22, 2023.

Case No. 23 BE 0031

{¶7}   The matter then proceeded to a jury trial on June 22, 2023.  At the end of the trial, the court dismissed the alternate juror.  During deliberations, the bailiff informed the court that one of the jurors had left the jury room and was found in the hallway talking on the phone to his wife.  The juror told the bailiff that he did not feel that he could continue with deliberations.  He said that he had a difficult time speaking in front of others and that he felt he could not continue.  The court questioned the juror and the juror told the court the same thing.  Consequently, the court dismissed that juror and called the alternate juror back to the courtroom.  The court instructed the jury that they must begin their deliberations anew with the alternate juror.  The jury found Appellant guilty as charged.

{¶8}   The trial court subsequently held a sentencing hearing.  The court sentenced Appellant to 8 to 12 years in prison to be served consecutively to a sentence Appellant was serving in Indiana for a crime committed during the time he absconded from Belmont County.

{¶9}   Appellant filed a timely notice of appeal on July 11, 2023.  He now raises two assignments of error for our review.

{¶10}  Appellant's first assignment of error states:

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO AGREE TO A MISTRIAL WHEN IT WAS OFFERED BY THE COURT AND THE STATE OF OHIO AGREED.

{¶11}  After reading the instructions to the jury, the trial court excused the alternate juror from her service.  (Tr. 369).  The jury then went into the jury room to begin their deliberations.  After approximately two and a half hours of deliberations, the bailiff informed the court of a potential issue with one of the jurors.  (Tr. 372).  The bailiff informed the court that a juror was in the hallway outside of the jury room talking on the phone with his wife.  (Tr. 372).  That juror informed the bailiff that he was unsure if he was able to continue with his service.  (Tr. 373).  The bailiff then called the alternate juror to return to court.  (Tr. 374).

{¶12}  The trial court then called the juror found in the hallway into the courtroom.  (Tr. 374).  The juror informed the court that he did not think he could finish the deliberations.  (Tr. 375).  He stated he had a hard time speaking in front of people and he

– 4 –

did not feel that he could complete his responsibilities as a juror.  (Tr. 375-377).  The court dismissed him from his service.  (Tr. 377).

{¶13}  The court then called the jury into the courtroom and explained to them what had happened.  (Tr. 378-379).  It told them that once the alternate juror arrived, they would have to begin their deliberations anew.  (Tr. 379-380).  Next, the court and counsel had a discussion about what deliberating anew meant.  (Tr. 381).  The court stated that the jury would have to start all over.  (Tr. 381).  The other option, the court said, would be to declare a mistrial and begin the trial another day.  (Tr. 382).  The prosecutor indicated he would agree to a mistrial.  (Tr. 382).  Appellant's counsel, however, stated that he would not agree to a mistrial.  (Tr. 382).

{¶14}  The alternate juror then arrived back at the courtroom within ten minutes of the court excusing the other juror.  (Tr. 382-383).  The court informed her of what had happened.  (Tr. 383).  The court then spoke with the alternate juror:

THE COURT:   * * * We had indicated to you previously you couldn't discuss anything with anyone - -

JUROR * * *:  Yes.

THE COURT:  - - or tell anyone what your thoughts would have been.  Did you comply?

JUROR * * *:  Yes.  I didn't see anyone or talk to anyone.

THE COURT:  All right.

(Tr. 383-384).  Subsequently, the court sent the alternate juror into the jury room so that the jury could begin their deliberations anew.

{¶15}  Appellant argues his counsel was ineffective for failing to agree to a mistrial. He claims that if a mistrial would have been granted, he would have been in a better position to reevaluate his prior decision to turn down the State's pre-trial offer of a plea deal for a five-year sentence.

{¶16}  To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test.  First, appellant must establish that counsel's performance

Case No. 23 BE 0031

has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. *Id.* To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley*, at paragraph three of the syllabus.

**{¶17}** Appellant bears the burden of proof on the issue of counsel's ineffectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

**{¶18}** Appellant cannot establish ineffectiveness in this case.

**{¶19}** First, the trial court properly instructed the jurors that they were to begin their deliberations anew with the alternate juror. This is in compliance with Crim.R. 24(G) which provides, "[i]f an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew."

**{¶20}** Second, the decision to not agree to a mistrial was likely a tactical decision on the part of defense counsel. As the State argues, defense counsel spent time during trial attacking the fact that the State did not introduce a video from the prison, questioning the chain of custody of the drugs, and questioning the testing and weighing of the drugs. Had the court declared a mistrial, Appellant would run the risk that the State would present evidence to dispute these issues. An appellate court will not second-guess decisions of counsel which can be considered matters of trial strategy. *State v. Rogers*, 2015-Ohio-2093, 34 N.E.3d 521, ¶ 24 (7th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985).

**{¶21}** Third, Appellant claims had a mistrial been declared, he could then reconsider the five-year plea deal previously offered by the State. But there is no reason to believe the State would offer this plea deal again. And at the sentencing hearing, Appellant's counsel even acknowledged that a six-year sentence might be warranted given the fact that Appellant absconded from the court's jurisdiction.

**{¶22}** Fourth, Appellant has not pointed to anything to indicate that the result of the trial would have been different. In other words, if a mistrial had been granted and the matter proceeded to a new trial, there is no indication that the result would be different.

**{¶23}** Accordingly, Appellant's first assignment of error is without merit and is overruled.

**{¶24}** Appellant's second assignment of error states:

APPELLANT'S CONSECUTIVE SENTENCE VIOLATED R.C. 2929.14(C)(4).

**{¶25}** Appellant contends here that the trial court failed to find at his sentencing hearing that consecutive sentences were not disproportionate to the seriousness of Appellant's conduct.

**{¶26}** When reviewing a felony sentence, an appellate court must uphold the sentence unless the evidence clearly and convincingly does not support the trial court's findings under the applicable sentencing statutes or the sentence is otherwise contrary to law. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1.

**{¶27}** As to the issue of consecutive sentences, R.C. 2929.14(C)(4) requires a trial court to make specific findings:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶28}** It has been held that although the trial court is not required to recite the statute verbatim or utter "magic" or "talismanic" words, there must be an indication that the court found (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger posed to the public, and (3) one of the findings described in R.C. 2929.14(C)(4)(a), (b), or (c). *State v. Bellard*, 7th Dist. Mahoning No. 12 MA 97, 2013-Ohio-2956, ¶ 17. The court need not give its reasons for making those findings however. *State v. Power*, 7th Dist. Columbiana No. 12 CO 14, 2013-Ohio-4254, ¶ 38. A trial court must make the consecutive sentence findings at the sentencing hearing and must additionally incorporate the findings into the sentencing entry. *State v. Williams*, 2015-Ohio-4100, 43 N.E.3d 797, ¶ 33-34 (7th Dist.), citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

**{¶29}** At the sentencing hearing, the court made the following findings going to consecutive sentences:

The Court is also going to find that based upon the criminal history in particular, the events of this case, the fact that this occurred while he was incarcerated, to protect the public from him, and otherwise to not demean the seriousness of what he's done, that this sentence should be served consecutive to his sentence currently imposed in the State of Indiana.

(Tr. 395).

Case No. 23 BE 0031

{¶30} It is clear that the trial court made the first and third consecutive-sentencing findings at the sentencing hearing. As to the first finding (that consecutive sentences are necessary to protect the public from future crime or to punish the offender), the court found that consecutive sentences were warranted to protect the public from Appellant. And as to the third finding (the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender), the court cited to Appellant's criminal history.

{¶31} As to the second required finding (that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger posed to the public), the court also made this finding. The court clearly cited to the danger Appellant posed to the public. And while the court did not use the specific words used in the statute, that consecutive sentences are not disproportionate to the seriousness of Appellant's conduct, the court did indicate that it made this finding. The trial court found that consecutive sentences were necessary so as to, "otherwise to not demean the seriousness of what he's done." (Tr. 395). In making this finding, the trial court complied with R.C. 2929.14(C)(4) regarding the second finding. Again, we are mindful that the trial court need not cite the "magic words" of the statute but instead must indicate by its findings that the three statutory requirements were met. *Bellard*, 2013-Ohio-2956, ¶ 17.

{¶32} Because the trial court made the required R.C. 2929.14(C)(4) consecutive-sentencing findings, Appellant's sentence is not contrary to law.

{¶33} Accordingly, Appellant's second assignment of error is without merit and is overruled.

{¶34} For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

Robb, P.J., concurs.

Case No. 23 BE 0031

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**